**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

ALMEKA DODDS and LINDA ITRIC, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

US NATIONAL PERSONAL CARE, LLC, and VICTOR VARGAS

Defendants.

Case No. 2:18-cv-01517-RFB-DJA

**ORDER**

## I. INTRODUCTION

Before the Court is Plaintiff's Motion to Certify Class for Conditional Certification and Court-Supervised Notice to Potential Opt-in Plaintiffs Pursuant to 29 U.S.C. § 216 (b) (ECF No. 15). For the following reason, the Court grants the motion.

## II. PROCEDURAL BACKGROUND

Plaintiffs sued Defendants US National Personal Care, LLC and Victor Vargas ("Defendants") on August 15, 2018. ECF No. 1. In their complaint, Plaintiffs asserted violations of 29 U.S.C. § 216(b) (the Fair Labor Standards Act or FLSA), and various violations of Nevada state wage and hour law. Plaintiffs sought conditional certification of a collective pursuant to 29 U.S.C. § 216(b) and certification under Rule 23 of the Federal Rules of Civil Procedure in the complaint. Defendants filed their answer on October 1, 2018. ECF No. 13. Plaintiffs now move for conditional certification of a collective pursuant to 29 U.S.C. § 216 (b). ECF No. 15. The

motion has been fully briefed. ECF Nos. 16, 17. The Court heard oral argument on this motion on September 5, 2019. ECF No. 23.

### III. FACTUAL BACKGROUND

Plaintiffs alleged as follows in their complaint: Plaintiffs Almeka Dodds and Linda Itric and those similarly situated are currently or formerly employed by US National Personal Care, LLC and Victor Vargas as personal care attendants. For many years the FLSA did not require employers to pay home healthcare worker overtime wages. The U.S. Department of Labor changed its regulations beginning January 1, 2015, so that home healthcare workers employed by third-party providers were no longer exempt from the FLSA's overtime requirements. Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,453 (October 1, 2013) (to be codified at 29 § C.F.R. 552). Defendants did not change their payroll practice to match the regulatory change and continued to pay all employees their regular rate instead of the one and a half time pay required for work in excess of 40 hours a week. Defendants would also engage in "check-splitting" by paying employees half of their wages by direct deposit and the other by check so that no single pay stub or check stub reflected more than 80 hours worked per two-week pay period. Employees were required to travel to the homes of clients to perform personal and healthcare related services. Defendants would give employees service plans that described which clients employees were to visit on that day, each day they were required to visit them, and times they were expected to arrive and leave the client's home. Defendants also did not compensate any personal care attendants for that mid-shift travel time.

Plaintiffs attach to their motion two declarations, one from Almeka Dodds and the other from Linda Itric. ECF Nos. 15-4, 15-5. In Almeka Dodd's declaration, she states that she was an hourly employee who worked for Defendants as a home healthcare worker, or personal care

attendant from April 2012 until May 2018. She states that she regularly worked for Defendants six to seven days each work week and 10-12 hours each workday. She was compensated for her work through the payment of an hourly wage of $11.00 an hour. Dodds attaches paystubs covering 17 two-week pay periods to her declaration showing that she worked 2,108.25 hours, including 748.25 overtime hours, but was paid her regular hourly rate of $11.00 for each hour worked.

Linda Itric's declaration similarly states that she was an hourly employee who worked for Defendants as a home healthcare worker, or personal care attendant, from January 2014 until February 2017. She states that she regularly worked for Defendants six to seven days and 35-60 hours each work week. For her hours worked Defendants paid her an hourly wage of $11 per hour. Itric submits paystubs covering 13 two-week pay periods, showing that she worked 1,307.05 hours, including 187.05 overtime hours, but was paid her regular hourly rate of $11.00.

Defendants attached to their opposition a declaration from Victor Vargas, the owner and administrator of US National Personal Care, LLC ("US National"). Vargas states that most employees of US National are part-time and work fewer than 30 hours a week. He also states that employees of US National rarely interact with each other, and they would be unlikely to have observed employment conditions of other US National employees. Vargas also stated that because US National generally hires employees on a part-time base, US National has a general policy of not assigning overtime hours.

**IV. LEGAL STANDARD**

The Fair Labor Standards Act ("FLSA") is a remedial statute, the purpose of which is to "protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Arkansas-Best Freight

System, Inc., 450 U.S. 728 (1981) (citing 29 U.S.C. § 202(a)). FLSA requires covered workers to be paid at least 1.5 times their normal rate for all work in excess of 40 hours weekly, provided the employer has actual or constructive knowledge that the work is occurring. 29 U.SC. § 207(a)(1); 29 C.F.R. § 785.11.

Under section 216(b) of the FLSA, "workers may join a collective action if they claim a violation of the FLSA, are "similarly situated" to the original plaintiff and affirmatively opt in." Campbell v. City of Los Angeles, 903 F.3d 1090, 1108 (9th Cir. 2018) (construing 29 U.S.C. § 216(b)). It is common practice for FLSA parties to move for preliminary certification pursuant to § 216(b). As the Ninth Circuit explains, preliminary certification "refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the "similarly situated" requirement of section 216(b)." Campbell, 903 F.3d, at 1109. In evaluating the propriety of the section 216(b) collective, the Ninth Circuit has endorsed a two-step "certification" process. Id. at 1100. The first step requires the plaintiffs to move for preliminary certification of the collective. Later, after necessary discovery has been completed, the defendants may move for "decertification" of the collective action on the ground that the fully developed record did not support a finding that the collective was sufficiently "similarly situated" pursuant to section 216 (b).

The FLSA does not define the term "similarly situated," but the Ninth Circuit has stated that "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Id. at 1117; Senne v. Kansas City Royals Baseball Corp. No. 17-16245, 2019 WL 3849564 (9th Cir. Aug. 16, 2019). "At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other

evidence." Campbell, 903 F.3d, at 1109.The Ninth Circuit has confirmed that the requisite level of consideration is "'lenient' . . . loosely akin to a plausibility standard, commensurate with the stage of the proceedings." Id.

**V.      DISCUSSION**

The Court finds that Plaintiffs have pled facts sufficient to find that workers are "similarly situated" and may opt-in to join this collective FLSA action pursuant to section 216(b). Specifically, the Court finds that Defendants' alleged practice of refusing to pay overtime or compensate employees for mid-shift travel time are similar issues of fact that are material to the disposition of the FLSA claims.

Defendants argue that Plaintiffs have failed to meet their evidentiary burden, because the declarations of two individuals is insufficient to support a finding of a company-wide policy of failing to pay overtime. However, defendants overstate the evidentiary burden required. The Ninth Circuit was clear that the requisite standard is lenient—one in which the Court is typically focused on the pleadings but "*may sometimes be supplemented by declarations or limited other evidence*." Campbell, 903 F.3d 1090, 1109 (emphasis added). Plaintiffs have pled enough at this very preliminary stage in the proceedings to support a finding that there may be other individuals who have been subjected to the same alleged policy. Furthermore, Defendant Vargas admits in his declaration that US National did not generally pay overtime to its employees. Moreover, nothing about the Court's preliminary certification is permanent. The Court still preserves its discretion to "decertify" the section 216 (b) collective after the close of relevant discovery.

/ / /

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Certify Class for Conditional Collective Certification and Court-Supervised Notice to Potential Opt-in Plaintiffs Pursuant to 29 U.S.C. § 216(b) (ECF No. 15) is GRANTED.

**IT IS FURTHER ORDERED** that a FLSA Collective is conditionally certified and defined as "all home healthcare workers who worked for Defendants US National Personal Care, LLC and Victor Vargas for over 40 hours in any given week on or after August 15, 2015 through the Date of Judgement."

**IT IS FURTHER ORDERED** that Defendants identify all putative members of the Collective by providing a list of their names, last known addresses, dates of employment, phone numbers, and email addresses in electronic and importable form within 14 (fourteen) days of the entry of this order.

**IT IS FURTHER ORDERED** that Plaintiff's Counsel send Notice as indicated in Exhibits 1 and 2 of its motion (ECF Nos. 15-2 and 15-3) via U.S. mail, email and text message.

**IT IS FURTHER ORDERED** that Plaintiff's counsel may send one reminder email 40 days into the opt-in period to collective members who have not yet opted in.

**IT IS FURTHER ORDERED** that a 90-day opt-in period commence from the date the Notice is sent by which Collective members may join the case by sending their written consents.

**IT IS FURTHER ORDERED** that the parties submit a joint proposed discovery plan/scheduling order within 10 days.

**DATED**: <u>September 30, 2019</u>.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**